**IN THE COMMON PLEAS COURT OF CLERMONT COUNTY, OHIO**
**CIVIL DIVISION**

| | |
|---|---|
| **TOTAL QUALITY LOGISTICS, LLC,**<br>4289 Ivy Pointe Boulevard<br>Cincinnati, Ohio 45245<br><br>Plaintiff,<br><br>v.<br><br>**BRANDON ORTEGA,**<br>4070 East Losino Avenue<br>San Tan Valley, Arizona 85140<br><br>and<br><br>**MAYBELL INDUSTRIES LLC**<br>15825 Muskegon Street<br>Houston, Texas 77032<br><br>Serve also:<br>Legalinc Corporate Services Inc.,<br>Registered Agent<br>10601 Clarence Drive, Suite 250<br>Frisco, Texas 75033<br><br>Serve also:<br>Kirk McCracken, FMCSA Agent<br>11811 Mason Montgomery Road<br>Cincinnati, Ohio 45249<br><br>Defendants. | Case No.<br><br>Judge<br><br>2026CVE851 JUDGE HADDAD<br><br>**VERIFIED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF** |

FILED
2026 JUN 18 AM 11:18
ALLEN H. FREEMAN
CLERK OF COMMON PLEAS
CLERMONT COUNTY, OH

For its Verified Complaint for Damages and Injunctive Relief against Defendants Brandon Ortega ("Ortega") and Maybell Industries LLC ("Maybell"), Plaintiff Total Quality Logistics, LLC ("TQL") states as follows:

## INTRODUCTION

This case arises mainly from Ortega's breach of his "Employee Non-Compete, Confidentiality and Non-Solicitation Agreement" (referred to herein as the "Agreement"); Defendants' tortious interference with contract/business relationships; and Defendants' misappropriation of TQL's confidential and trade secret information, used by Defendants to unfairly compete with TQL in violation of its rights described herein.

## PARTIES, JURISDICTION, AND VENUE

1. TQL is an Ohio limited liability company with its principal place of business located in Clermont County, Ohio. TQL provides freight brokerage and third-party logistics services to customers across the United States.

2. Ortega is an Arizona resident and former employee of TQL. Upon information and belief, he resides at 4070 East Losino Avenue, San Tan Valley, Arizona 85140. Ortega previously worked for TQL in its Phoenix, Arizona office until October 31, 2025.

3. Upon information and belief, Maybell is a Texas corporation with its principal place of business in Houston, Texas. Maybell provides third-party logistics services to customers across the United States.

4. Jurisdiction and venue are appropriate because the Agreement provides for Clermont County, Ohio as having an exclusive jurisdiction and venue for disputes between the parties; Ortega was assigned and used an Ohio phone number with a (513) area code at all times while working for TQL, accessed and used Confidential Information created, stored, and maintained at TQL's Clermont County, Ohio headquarters, and received wages paid out of Ohio, among other things; Maybell provides services throughout the United States; all improper acts and

conduct were purposely directed toward TQL's systems located at its Clermont County, Ohio headquarters; and all or part of TQL's claims for relief arose in Clermont County, Ohio.

## FACTS COMMON TO ALL COUNTS

5. TQL is a national leader in the third-party logistics industry, providing shipping services, third-party logistics services, freight brokerage services, truck brokerage services, and assistance with supply-chain management across the United States.

6. TQL's Customers[1] consist of companies that want to arrange the shipment of goods from one location to another. These Customers include companies that need to ship their own goods; however, TQL's Customers also include freight brokers that have already agreed to arrange goods on behalf of another Customer but need assistance in finding a Motor Carrier and/or additional parties with whom TQL does business to fulfill the shipment.

7. TQL does not own or operate any of its own trucks or trucking equipment. Nor does TQL employ any drivers or other employees to haul or otherwise physically move freight. Rather, TQL engages and coordinates independent carriers that are able and willing to haul and ship freight at the times and places required by TQL's Customers.

8. The third-party logistics industry (and the freight-shipping industry at large) is extremely competitive. Relationships with Customers, Motor Carriers, and other brokers are critical to success. It is very common in the brokerage industry for companies to have confidentiality, non-compete, and non-solicitation agreements with their employees and contractors.

9. Among other things, TQL's relationships with Customers and Motor Carriers are essential to sustained success within the industry. TQL spends a great deal of time, money, and

[1] "Customer," "Motor Carrier," and other capitalized terms are used herein in the same way they are defined in the Agreement.

other resources developing relationships with new Customers and strengthening relationships with existing ones.

10. Further, TQL has made substantial investments to develop and protect the secrecy of the proprietary systems, processes, and procedures that it uses to manage operations and to compete in this hyper-competitive industry.

11. TQL takes significant measures to protect its trade secrets and other confidential and proprietary information. For example, all freight brokers, as well as many other types of employees, before beginning employment with TQL, must sign restrictive covenants limiting their ability to unfairly compete with TQL, solicit TQL's Customers or employees, or disclose or misuse TQL's trade secrets and confidential and proprietary information.

12. In addition, TQL utilizes individualized passwords that are regularly changed and must be used for electronic access to proprietary and confidential information. Likewise, TQL's systems implement internal controls preventing employees from downloading or printing certain information, as well as restrictions on sending confidential information outside TQL's secured networks.

13. Ortega worked for TQL from August 13, 2018 to October 31, 2025 in its Phoenix, Arizona office.

14. Ortega came to TQL with no prior experience in the third-party logistics industry or the freight-shipping industry at large. Therefore, TQL provided Ortega with extensive training on matters including, among other things, its services, pricing structure, sales strategies and techniques, Customers, Motor Carriers, and general operations. TQL's unique logistics training program is intensive and generally lasts between eight (8) to twenty-six (26) weeks.

15. Ortega began his employment at TQL as a Logistics Account Executive Trainee and successfully completed TQL's comprehensive and unique training program. Ortega was subsequently promoted to Logistics Account Executive, Senior Logistics Account Executive, and Saturday Group Leader positions.

16. While working for TQL, Ortega possessed a substantial and consistent revenue stream, including serving as the primary contact for several customer accounts, thereby placing him in a position of trust. Moreover, Ortega served as a source of advice, training, and information for other TQL employees. Ortega was successful as a TQL broker.

17. Throughout his employment with TQL, Ortega acquired detailed knowledge of TQL's unique operations, including, without limitation, shipping, third-party logistics, freight and truck brokerage, and supply-chain management services. Ortega also had access to TQL's confidential, highly-proprietary, and/or trade secret information in performing his job duties, including: access to proprietary software, operating policies and procedures, financial records (such as credit history and other similar information about current and prospective Customers, suppliers, and Motor Carriers), information about pricing and the manner and mode of doing business, the current and historical terms of TQL's business dealings and relationships with Customers and Motor Carriers, proprietary logistics and sales training materials, contracts and agreements of all kinds, sales lists and strategies, and detailed Customer and Motor Carrier lists and information.

18. Ortega was also required to manage existing and potential business relationships with TQL Customers, prospective Customers, and Motor Carriers. Ortega developed close relationships with and has an intimate knowledge of the business practices of TQL's Customers and the Motor Carriers that TQL contracts with to transport its Customers' freight.

19. Before commencing employment with TQL, Ortega was required to sign, and did sign, the Agreement on August 13, 2018, a true and accurate copy of which is attached as Exhibit 1.

20. In the Agreement, Ortega agreed, among other things, that during the course of his employment with TQL and for a period of one (1) year after employment with TQL ended, he would not: (a) directly or indirectly, own, operate, maintain, consult with, be employed by, engage in, or have any other interest in any business or entity that competes with TQL; (b) directly or indirectly solicit any of TQL's Customers, or take any action to divert work from TQL; or (c) directly or indirectly interfere or tamper with, disrupt or attempt to disrupt any contractual or business relationship TQL has with any Customers or Carriers. (See Exhibit 1 at Section 10(b).)

21. The Agreement acknowledges that TQL is an Ohio company that provides shipping, third-party logistics, freight brokerage, truck brokerage, and supply-chain management services throughout the United States. (See Exhibit 1 at p. 1.)

22. Ortega acknowledged and agreed that TQL maintains "Confidential Information" as defined in the Agreement. (See Exhibit 1 at p. 1.)

23. The terms "Customer," "Motor Carrier," and "Competing Business" are also defined in the Agreement. (See Exhibit 1 at Section 10(f).)

24. In the Agreement, Ortega agreed that he was placed in a position of trust as TQL's employee; was given access to its Confidential Information; and had a duty to protect such Confidential Information from unauthorized disclosure. (See Exhibit 1 at p. 2.)

25. Ortega acknowledged and agreed that TQL's Confidential Information, whether or not formally designated as such, was vital to the success of TQL's business and that any

unauthorized use or disclosure of TQL's Confidential Information would cause TQL substantial and irreparable harm. (See Exhibit 1 at p. 2.)

26. Ortega also agreed that TQL's Confidential Information is a trade secret, a valuable asset of TQL's business that gives TQL an advantage over competitors. (See Exhibit 1 at p. 2.)

27. Ortega promised that he would at all times refrain from using, sharing, or disclosing TQL's Confidential Information to any individual or business entity (except as authorized by TQL in the conduct of TQL's business or as required by law). Ortega further agreed that he would not make use of TQL's Confidential Information for the benefit of anyone other than TQL. (See Exhibit 1 at Section 10(c).)

28. Ortega acknowledged that association with a business competitive with TQL would inevitably result in him revealing, basing judgments and decisions upon, or otherwise using TQL's Confidential Information to unfairly compete with TQL. (See Exhibit 1 at Section 8.)

29. Ortega further agreed that the running of the one (1) year non-competition restriction would be tolled during any time period during which he was in violation of any provision of the Agreement. (See Exhibit 1 at Section 10(b)(vi).)

30. Ortega further agreed that a breach of any part of the Agreement would entitle TQL to an injunction, actual damages, and attorney's fees. (See Exhibit 1 at Section 10(e).)

31. In consideration of the Agreement, as set forth above, TQL hired Ortega and/or continued to employ him. TQL would not have provided Ortega with such extensive training, allowed him to gain knowledge of its proprietary Customer information, or given him access to any of its Customers and prospective Customer relationships had he not executed the Agreement.

32. Ortega separated from TQL on October 31, 2025.

33. TQL recently discovered that Ortega has been unfairly competing against TQL by working for or with Maybell as an independent contractor within the restricted period set forth in the Agreement.

34. According to its website, Maybell holds itself out as a logistics company operating throughout the United States.

35. Maybell maintains active brokerage authority through the U.S. Department of Transportation's Federal Motor Carrier Safety Administration ("FMCSA").

36. Maybell is a "Competing Business" as defined in the Agreement.

37. Accordingly, per the express terms of the Agreement, Ortega is prohibited from working for or with Maybell during the time periods set forth therein.

38. TQL has also discovered that Ortega is soliciting and moving freight for his former TQL Customers in violation of his Agreement.

39. Ortega has been in ongoing violation of his Agreement, and the obligations contained therein have been tolled during all periods of violation as provided for in the Agreement.

40. Upon information and belief, Ortega has been working for or with Maybell in the same or similar position he held with TQL. Given that Ortega has assumed a similar, if not the same, role that he had during his employment with TQL, it is inevitable that he will use TQL's Confidential Information to unfairly compete with TQL, in violation of the Agreement, if he is permitted to continue working for Maybell.

41. As a result of Defendants' conduct, TQL seeks monetary damages in an amount to be proven at trial, believed to be in excess of $25,000, as well as injunctive and other relief described below.

**COUNT ONE – BREACH OF CONTRACT**
**(Against Defendant Ortega)**

42. TQL incorporates each of the preceding Paragraphs of this Complaint as if fully restated here.

43. TQL and Ortega entered into the Agreement on August 13, 2018, freely and without duress.

44. The Agreement is a valid and legally enforceable contract that governs Ortega's post-employment conduct to the extent described therein.

45. In exchange for Ortega's commitment to be bound by the Agreement, TQL provided Ortega with adequate and sufficient consideration, including, without limitation, ongoing employment and/or new position(s), compensation, extensive training, and continued access to TQL's Confidential Information to assist with his professional development.

46. Section 10 of the Agreement provides for a one-year period following employment during which Ortega is prohibited from accepting employment or affiliation or association with competitors of TQL. Section 10 also provides for the tolling of that one-year period during any time period during which Ortega is in violation of any provision of the Agreement.

47. TQL fully performed all of its obligations under the Agreement.

48. Upon information and belief, Ortega has breached the Agreement by, among other things, failing to abide by the confidentiality obligations discussed above, misappropriating TQL's trade secrets, working for or with a Competing Business, Customer, and/or Motor Carrier of TQL's, soliciting TQL's current and/or former employees, and/or soliciting TQL's Customers and/or Motor Carriers.

49. As a direct and proximate result of these breaches, TQL has been damaged in an amount to be proven at trial.

50. Monetary damages alone will be insufficient to remedy the harm caused to TQL by Ortega's breach of the Agreement. As a direct and proximate result of Ortega's actual or threatened unlawful conduct, TQL has suffered, and will continue to suffer, irreparable harm for which there is no adequate remedy at law.

51. Ortega agreed that a breach or threatened breach of any part of the Agreement entitled TQL to an injunction.

52. TQL is entitled to injunctive relief to prevent any such further unlawful conduct.

53. Pursuant to the Agreement, TQL is also entitled independently to recover the attorney's fees and costs expended as a result of Ortega's conduct, in an amount to be proven at trial and/or through appropriate post-trial motions.

54. Therefore, TQL requests a temporary restraining order, preliminary injunction, and/or a permanent injunction prohibiting Ortega from further breaches of his Agreement, with tolling during the period of any violations, as appropriate.

**COUNT TWO – TORTIOUS INTERFERENCE WITH CONTRACT**
**(Against Defendant Maybell)**

55. TQL incorporates each of the preceding paragraphs as if fully rewritten here.

56. TQL's Agreement with Ortega is a valid and binding contract.

57. At all relevant times, Maybell knew or should have known of TQL's Agreement with Ortega. Nonetheless, Maybell hired and has continued to work with Ortega.

58. Upon information and belief, Maybell knowingly and intentionally procured and/or continued to permit Ortega to breach his contractual obligations to TQL under the Agreement without any justifiable excuse.

59. Upon information and belief, as a direct and proximate result of Maybell's conduct, TQL has been and/or inevitably will be damaged by, among other things, the loss of sales revenue,

Customer and Motor Carrier relationships and goodwill, and fair competition. TQL has suffered monetary damages in an amount to be proven at trial.

60. Monetary damages alone will be insufficient to remedy all of the harm caused to TQL by Maybell's tortious interference with TQL's contracts as described above. As a direct and proximate result of Maybell's unlawful conduct, TQL has suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law.

61. TQL is entitled to injunctive relief to prevent any such further unlawful conduct.

62. Therefore, TQL requests a temporary restraining order, preliminary injunction, and permanent injunction prohibiting Maybell from tortiously interfering with the Agreement and with TQL's other contracts with its current and former employees. TQL further requests recovery of attorney's fees, compensatory damages, and punitive damages as permitted by law.

63. Because Maybell's conduct has been intentional, willful, and malicious, TQL is additionally entitled to an award of punitive damages.

**COUNT THREE – TORTIOUS INTERFERENCE WITH CONTRACT/BUSINESS RELATIONS**
**(Against All Defendants)**

64. TQL incorporates each of the preceding paragraphs as if fully rewritten here.

65. TQL has contractual and/or business relationships with its Customers and Motor Carriers, of which Defendants have had knowledge at all relevant times.

66. Despite this knowledge, Defendants have knowingly and intentionally interfered with these contractual and/or business relationships, and inevitably will continue to do so, for their own benefit.

67. Defendants are acting tortiously, willfully, and maliciously, without any justifiable excuse, and in bad faith.

68. As a direct and proximate cause of Defendants' conduct, TQL has been and/or inevitably will be damaged by, among other things, the loss of sales revenue, Customer and Motor Carrier relationships and goodwill, and fair competition. TQL has suffered monetary damages in an amount to be proven at trial.

69. Monetary damages alone will be insufficient to remedy all of the harm caused to TQL by Defendants' tortious interference. As a direct and proximate result of Defendants' actual or threatened unlawful conduct, TQL has suffered, and will continue to suffer, irreparable harm for which there is no adequate remedy at law.

70. TQL is entitled to injunctive relief to prevent any such further unlawful conduct.

71. Because Defendants' conduct has been intentional, willful, and malicious, TQL is additionally entitled to an award of punitive damages.

**COUNT FOUR – MISAPPROPRIATION OF TRADE SECRETS UNDER OHIO STATE LAW ONLY**
**(Against All Defendants)**

72. TQL incorporates the preceding paragraphs as if fully rewritten here.

73. TQL has trade secrets and develops and maintains confidential and highly proprietary information, including, among other items, software systems and other proprietary technology, information about its business dealings and relationships with its Customers, Customer lists, Motor Carriers and Motor Carrier lists, transactions, pricing, purchasing information, the manner and mode of doing business, contracts and agreements of all kinds (including those with Customers and vendors), marketing, and sales lists and strategies.

74. TQL's Confidential Information also includes its extensive and unique training program, which TQL develops and maintains for the purpose of training its new employees, many of whom have no prior experience in the logistics industry.

75. TQL's Confidential Information derives independent economic value, actual and potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, including TQL's competitors. And this information is the subject of efforts that are reasonable under the circumstances to maintain its secrecy including conditioning employee access of TQL's systems upon use of constantly changing passwords, restricting employees from downloading or printing certain information, and requiring employees to agree to sign an agreement containing confidentiality and restrictive covenant provisions similar to Ortega's Agreement.

76. TQL has spent much time over many years and invested significant sums, in terms of both financial and human resources, to develop and maintain this information.

77. TQL's Confidential Information is protected, in whole or in part, as a trade secret under applicable state law.

78. Defendants' misconduct and wrongful taking, use, and/or inevitable use of TQL's Confidential Information constitutes misappropriation under applicable state law, because Defendants have used, are threatening to use, and/or inevitably will use the Confidential Information to unfairly compete with TQL.

79. Defendants knew or should have known that they acquired those trade secrets by and/or were using them for improper means, and had clear knowledge that they only had access to the protected information under circumstances giving rise to a duty to maintain the information's secrecy.

80. Upon information and belief, Defendants have willfully misappropriated, threatened to misappropriate, and/or inevitably will misappropriate TQL's trade secrets including, among other things, TQL's proprietary technology, Customer and Motor Carrier identities, lists,

and contact information, as well as other Customer and Motor Carrier information, for use against TQL and for their own benefit, within the meaning of applicable state law. This includes any information that Ortega has shared and/or inevitably will share with Maybell.

81. As a direct and proximate result of Defendants' conduct, TQL has been damaged by, among other things, the loss of sales revenue, Customer relationships and goodwill, and fair competition. TQL has suffered monetary damages in an amount to be proven at trial.

82. Monetary damages alone will be insufficient to remedy all of the harm caused to TQL by Defendants' misappropriation. As a direct and proximate result of Defendants' actual or threatened misappropriation of TQL's trade secrets, TQL has suffered, and will continue to suffer, immediate, substantial, and irreparable harm for which there is no adequate remedy at law.

83. Therefore, TQL requests a temporary restraining order, preliminary injunction, and/or permanent injunction prohibiting Defendants' further use and misappropriation of TQL's trade secrets, with restrictive covenants extended through tolling as appropriate. TQL further requests recovery of attorney's fees and punitive damages as permitted by law, because Defendants' conduct has been intentional, willful, and malicious.

**COUNT FIVE – REPLEVIN**
**(Against All Defendants)**

84. TQL incorporates each of the preceding paragraphs as if fully rewritten here.

85. TQL has developed and is the owner of confidential, proprietary, and/or trade secret information including, among other items, software systems and other proprietary technology, information about its business dealings and relationships with its Customers, Customer lists, Motor Carriers and Motor Carrier lists, transactions, pricing, purchasing information, the manner and mode of doing business, contracts and agreements of all kinds (including those with Customers, Motor Carriers, and vendors), marketing, and sales lists and strategies.

86. TQL has the right to immediate possession of the above referenced information because TQL is the rightful owner of that information, including its Confidential Information as defined in the Agreement.

87. Upon information and belief, Defendants have in their possession and are wrongfully retaining some or all of the above referenced information and refusing to return it to TQL, including any such information that Ortega has shared and/or inevitably will share with Maybell.

88. Accordingly, TQL is entitled to the immediate return of any of the above referenced information that is in Defendants' possession, custody, or control as well as any monetary damages caused by Defendants' wrongful withholding of the same, in an amount to be proven at trial.

**COUNT SIX – CONVERSION**
**(Against All Defendants)**

89. TQL incorporates each of the preceding paragraphs as if fully rewritten here.

90. TQL has developed and is the owner of confidential, proprietary, and/or trade secret information including, among other things, software systems and other proprietary technology, information about its business dealings and relationships with its Customers, Customer lists, Motor Carriers and Motor Carrier lists, transactions, pricing, purchasing information, the manner and mode of doing business, contracts and agreements of all kinds (including those with Customers, Motor Carriers, and vendors), marketing, and sales lists and strategies.

91. TQL has the right to immediate possession of the above referenced information because TQL is the rightful owner of that information, including its Confidential Information as defined in the Agreement.

92. Upon information and belief Defendants have wrongfully deprived TQL of possession of the above-referenced information by taking possession of it, using it, and refusing

to return it to TQL, including any such information that Ortega has shared and/or inevitably will share with Maybell.

93. As a direct and proximate cause of Defendants' conduct, described above, TQL has suffered monetary damages in an amount to be proven at trial.

## PRAYER FOR RELIEF

**WHEREFORE,** TQL respectfully requests that this Court issue judgment in its favor as follows:

a. On Count One, as against Ortega, grant money damages in an amount to be determined at trial as further described above, as well as a temporary restraining order and preliminary and permanent injunctive relief, along with other relief, such as attorney's fees, and additional relief to be addressed in forthcoming motions;

b. On Count Two, as against Maybell, grant money damages in an amount to be determined at trial as further described above, as well as a temporary restraining order and preliminary and permanent injunctive relief, and award attorney's fees, compensatory damages, and punitive damages as permitted by law;

c. On Count Three, as against all Defendants, grant money damages in an amount to be determined at trial as further described above, as well as a temporary restraining order and preliminary and permanent injunctive relief, and award attorney's fees, compensatory damages, and punitive damages as permitted by law;

d. On Count Four, as against all Defendants, grant money damages in an amount to be determined at trial as further described above, as well as a temporary restraining order and preliminary and permanent injunctive relief, and award attorney's fees, compensatory damages, and punitive damages as permitted by law;

e. On Count Five, as against all Defendants, award specific performance by directing Defendants to immediately return to TQL any confidential or proprietary information of TQL, including but not limited to, software systems and other proprietary technology, information about its business dealings and relationships with its Customers, Customer lists, Motor Carriers and Motor Carrier lists, transactions, pricing, purchasing information, the manner and mode of doing business, contracts and agreements of all kinds (including those with Customers, Motor Carriers, and vendors), marketing, sales lists and strategies, and any and all of TQL's Confidential Information;

f. On Count Six, as against all Defendants, award monetary damages in an amount to be determined at trial as further described above;

g. Order Defendants to pay court costs, prejudgment interest, and post judgment interest, and award any such other or further relief that this Court deems just and proper or that justice may require.

Respectfully submitted,

DINSMORE & SHOHL LLP

Matthew J. Bakota (0079830)
Callum S. Morris (0096817)
Emily M. Snively (0104656)
1 South Main Street, Suite 1300
Dayton, Ohio 45402
Phone: (937) 449-6400
Fax: (937) 449-6405
matthew.bakota@dinsmore.com
callum.morris@dinsmore.com
emily.snively@dinsmore.com

Michael B. Mattingly (0089847)
255 East Fifth Street, Suite 1900
Cincinnati, Ohio 45202
Phone: (513) 977-8200
Fax: (513) 977-8141
michael.mattingly@dinsmore.com

*Attorneys for Plaintiff Total Quality Logistics, LLC*

**TO THE CLERK:**

Please serve Defendants by certified mail, return receipt requested. Thank you.

**VERIFICATION**

| | |
|---|---|
| STATE OF OHIO | ) |
| | ) ss: |
| COUNTY OF CLERMONT | ) |

I, Marc Bostwick, being duly cautioned and sworn, state that I am authorized to act as an agent of Plaintiff for the purpose of verifying the Complaint herein, in accordance with the Ohio Rules of Civil Procedure. To the extent I have personal knowledge of the matters alleged in the Complaint, the information is true and accurate to the best of my knowledge and belief. As to any matters for which I do not have personal knowledge, I am authorized by Plaintiff to state that Plaintiff is informed and believes that the allegations of the Complaint are true and accurate to the best of its knowledge and belief.

Marc K Bostwick

MARC K. BOSTWICK
(Printed name)

**NOTARY PUBLIC**

Subscribed and sworn by Marc Bostwick before me, a Notary Public, on this 17th day of June, 2026.

Notary Public

NOTARIAL SEAL — STATE OF OHIO

Alicia K. Gilbert
Attorney at Law
Notary Public, State of Ohio
My Commission Has No Expiration Date
Sec 147.03 RC